Baldwin, Admx., *v.* Trowbridge.

JULIA F. BALDWIN, administratrix *cum testamento annexo* of Susan Baldwin, deceased,

*v.*

CAROLINE E. TROWBRIDGE, CORDELIA A. OGDEN, WILLIAM H. BALDWIN, CORA BALDWIN, CLARK FOSDICK, PAULDING FOSDICK, JENNIE B. CHILDS and THE NEW YORK SECURITY AND TRUST COMPANY, trustees under the last will of Charles B. Fosdick, deceased; and CORDELIA A. OGDEN, JULIA F. BALDWIN and FREDERIC A. OGDEN, executors and trustees under the will of Susan M. Baldwin, deceased.

WILLIAM H. BALDWIN and CORA BALDWIN

*v.*

CLARK FOSDICK, PAULDING FOSDICK and JENNIE B. CHILDS and THE NEW YORK SECURITY AND TRUST COMPANY, trustees under the will of Charles B. Fosdick, deceased.

[Submitted November 19th, 1901. Decided November 23d, 1901. Filed December 21st, 1901.]

1. Where testatrix directed her executors to hold realty for a period not exceeding ten years, and within that period to sell it and pay the proceeds in equal shares to her then living children, the share of any deceased child being paid to his issue, or, if without issue, divided among the children surviving at the time of such sale, the fund arising from a sale after the expiration of ten years should be divided as if the sale had taken place at the close of the ten-year period, so that the share of a child dying after the prescribed period, but before sale, should go to his representatives and not be divided among his brothers and sisters.

2. Testatrix devised realty to the executor to hold in trust and sell within a certain period, and divide the proceeds between her then living children, the share of any deceased child to go to his surviving issue. The property was unproductive, and of little present worth, its future value depending largely on the ability of the heirs to hold it for market; so that one of testatrix's daughters, whose husband was executor, bought the interest of a spendthrift brother, avowing her intention of holding such interest for the benefit of his children, subject to the amount she paid

Baldwin, Admx., *v.* Trowbridge.

therefor. The children of this son were entitled to a share of the income of other property equal to the share of each of testatrix's other children, and the executor paid the taxes on the trust property from this income.— *Held*, that the brother's share was held in trust for his children.

3. In a suit to construe a will, where heirs of one beneficiary filed a cross-bill against the executors of another, seeking to establish a trust in the share conveyed by their ancestor to such other beneficiary, evidence of other beneficiaries as to declarations of the grantee in the conveyance attacked was not inadmissible because by a party to the record against another party in a representative capacity, since the cross-bill was, in effect, a separate suit.

4. Where it was sought to establish a trust in land by showing that the property had been dealt with on the books of the alleged trustee as a trust estate, the signature of such trustee to checks drawn in pursuance to entries on the books which were made by his clerk was equivalent to a statement that his title was held on the basis shown by the books, and both together were sufficient to satisfy the requirement of the statute of frauds that a declaration of trust must be signed by the party.

On bill for construction of will. On cross-bill for relief. On final hearing on bill, answers and proofs.

The bill is filed by the administratrix *cum testamento annexo* of Susan Baldwin for the direction of the court as to the distribution of a fund in her hands of about twenty-one thousand dollars, which is the proceeds of the sale by her as such administratrix of a tract of land in the county of Bergen, in the State of New Jersey, of which the testatrix, Susan Baldwin, died seized.

The bill is in the nature of an interpleader, and the issues under it are raised by the answers of the several beneficiaries under the will, or their legal representatives.

The testatrix died in the month of July, 1881, domiciled in New York City, leaving six children, namely, Mary E. Fosdick, wife of Charles B. Fosdick; Caroline E. Trowbridge, Cordelia A. Ogden, Julia F. Baldwin (the complainant), Susan M. Baldwin and David W. Baldwin. Of these David W. Baldwin died intestate in 1891, leaving him surviving the defendants William H. Baldwin and Cora Baldwin.

Mary E. Fosdick died about November 1st, 1895, leaving her husband, Charles B. Fosdick, and two grandchildren, Clark Fosdick and Paulding Fosdick, who are defendants herein, and

by her will devised all the residue of her estate to her husband, Charles B. Fosdick, who died in April, 1897, testate of a will of which the said Paulding and Clark are the beneficiaries, and Jennie B. Childs and the New York Security and Trust Company are the trustees.

David W. Baldwin, on the 29th of December, 1883, about eighteen months after the death of his mother, conveyed all his right, title and interest in the real estate in New Jersey to his sister, Mary E. Fosdick.

Susan M. Baldwin died on the 22d of January, 1900, unmarried, leaving no issue, testate of a will, of which the defendants Cordelia A. Ogden, Julia F. Baldwin and Frederic A. Ogden are executors and trustees.

The questions to be solved, and upon which the complainant asks the advice of the court, arise under the ninth clause of the will of the testatrix, which is as follows:

> "*Ninth.* All my real estate, situate in the State of New Jersey, I give and bequeath to my executors hereinafter named, in trust, to hold the same for a period not exceeding the term of ten years after my death, and within that period, in their discretion, to sell the same, and convert it into money, and pay over to my children, share and share alike, and in the event of the death of any of my children before such sale is made, then I direct that the share such child would have been entitled to shall be paid to his or her children, if he or she have any him or her surviving, and in the event of he or she leaving no issue, then such share to be divided equally between my surviving children at the time of such sale."

(There being a slight discrepancy between the language found in the record of the will in Bergen county and that in New York, the court was furnished with a sworn copy taken from the original will on file in New York City.)

The sale of the premises took place in the month of July, 1900, several months after the death of Susan M. Baldwin, one of the beneficiaries.

The three surviving children—Caroline E. Trowbridge, Cordelia A. Ogden and Julia F. Baldwin—contend that by the true construction of this clause no title vested in any of the beneficiaries until after the sale of the property; hence, that the share of Susan M. Baldwin, who died without children, passed to them as surviving children of the original testatrix.

This view is contested by the three executors of the will of Susan M. Baldwin.

The executors and trustees under the will of Charles B. Fosdick claim that all the children took a vested interest, at least after the lapse of ten years from the death of the testatrix, and that the share of Mary E. Fosdick passed, by her will, to Charles B. Fosdick, and under his will to them as trustees, while the two grandchildren of Mary E. Fosdick, Clark and Paulding Fosdick, claim the contrary, and that the share of their grandmother comes to them directly as her representatives. And to the same effect is the claim of William H. Baldwin and Cora Baldwin, children of David W. Baldwin, who claim that nothing passed by the conveyance made by their father, David W. Baldwin, to his sister, Mary E. Fosdick.

William H. Baldwin and Cora Baldwin (children of David W. Baldwin) further claim, and set up by a cross-bill against the estate of Mary E. Fosdick and Charles B. Fosdick, that the conveyance by David W. Baldwin to Mary E. Fosdick, made in 1883, if effective at all as a conveyance, must be treated as a mortgage for certain moneys advanced by Mary E. Fosdick to their father, and that they are entitled to so much of the one-sixth share of their father as should remain after satisfying the moneys so advanced; and, further, by amendment, that if not a mortgage, then that Mrs. Fosdick held the title in trust for them.

Evidence was adduced on these points.

*Mr. Milton Demarest,* for the complainant.

*Mr. Charles L. Carrick,* for the executors of the will of Susan M. Baldwin, deceased, and Frederick A. Baldwin, beneficiary thereunder.

*Mr. Maximilian T. Rosenberg,* for Caroline E. Trowbridge and Cordelia A. Ogden, and for William H. and Cora Baldwin, children of David W. Baldwin.

*Mr. John M. Dickinson* and *Mr. Eugene D. Hawkins* (of the New York bar), for the trustees of Charles B. Fosdick and for Clark and Paulding Fosdick.

PITNEY, V. C.

No question is or can be raised as to the efficiency of the sale and conveyance of the premises by the substituted executor after the expiration of the ten years' limit fixed by the will. The circumstances forbid it.

There is, however, nothing in the will to indicate that the testatrix had in mind a postponement of the sale beyond ten years. The language, "not exceeding ten years," is quite significant on this point.

The construction of the clause in question is not difficult. It gave each of the six children named a present equitable estate in fee-simple in the premises in question, subject to the power of sale for ten years, and subject to be divested if either one died before such sale.

The effect of the exercise of the power of sale within the ten years would have been simply to compel the beneficiaries to take the proceeds of such sale instead of the land itself. In the meantime it is quite clear that the rents and profits, if any, belonged to the holders of the equitable title. There is no glimpse of an intention to give those rents to the executors as individuals, or to have them accumulate until the sale. The executors held the bare legal title for the purpose of managing the land, and for sale.

Two questions arise—*first,* Susan M. Baldwin having died without children long after the expiration of the ten years limited by the will and about six months before the actual sale, did her share go over to the surviving children or to the beneficiaries named in her will? This depends upon the force of the words "such sale" in the clause which I quote:

"In the event of the death of any of my children before *such sale* is made, * * * leaving no issue, such share [share of the child so dying] to be divided equally between my surviving children."

I am of the opinion that the words "such sale" so used must be held to refer to a sale within the ten years' limit. That was the sale, and the only sale, which was in the testatrix's mind. Besides, the disposition of the courts is to terminate as soon

as practicable such limitations. To adopt a different construction in the present instance is to put it in the power of the trustees to postpone the limit indefinitely. I am of the opinion that the share of Susan M. Baldwin must go to her personal representatives for the purpose of her will.

And this conclusion disposes of the claims of the grandchildren of Mrs. Fosdick to take directly as her representatives instead of through their grandfather's will; and also of the claim of William H. and Cora Baldwin to take their father's share because he died before the sale of the land, although he survived the limit of ten years.

The *second* question, arising under the cross-bill of David W. Baldwin's children, is as to the character of the conveyance made by David W. Baldwin to his sister, Mrs. Fosdick. The facts surrounding and succeeding that conveyance are as follows: The testatrix was a domiciled resident of New York City and owned productive real estate there situate. By her will, after some specific bequests of chattels, she divided her personal estate equally among her children. But her real estate in New York, by the tenth item, she gave to her executors in trust to divide and pay over the net income thereof in six equal shares to five of her children, naming them (and excluding her son David W. Baldwin), and to Sarah Jane, wife of David W. Baldwin, and after their death to their children.

The result of this provision was that David W. Baldwin was excluded from any share in her estate, except in her personalty and in the New Jersey lands here in question. He was, in fact, a spendthrift, and might be tempted to convey to some stranger his interest in the New Jersey land. The intervention of a stranger to a share in the title to that land might embarrass the other brothers and sisters in their management of it; and a sale by David would probably be made for a small consideration, to the pecuniary injury of both himself and his children, if made before the property was sold, or before the lapse of ten years; for, of course, no stranger would pay anything like the value of his interest in the lands when the realization of anything under it would depend upon the duration of his life; and if he survived the ten years' limit, his children would be entirely cut off.

The New Jersey property produced no income, was of speculative value, and much depended upon the ability of the parties to hold it for market.

The result of a consideration of this situation was that Mrs. Fosdick bargained with David to take from him an absolute conveyance of his interest in the New Jersey property at the price of $960, payable in monthly installments of $20, and in pursuance of that bargain he made to her the conveyance of December 29th, 1883.

Mrs. Fosdick's husband was a member of a firm of merchants, and it appears, by entries on the books of the firm, verified by the evidence of Mr. Fosdick's confidential clerk and bookkeeper, on his personal knowledge, that the payments so contracted for were periodically made by Mr. Fosdick and charged to his (Fosdick's) wife. The payment of $20 per month was continued to October, 1885, and then, by mutual agreement, it was increased to $30 per month, until the whole sum of $960 was paid, March 1st, 1887.

David W. Baldwin died, as we have seen, in July, 1891. His wife died before the testatrix.

It also abundantly appears, by parol evidence—that of the two sisters, defendants herein—that Mrs. Fosdick declared and intended, at the inception of this transaction and thenceforward, to hold this share to secure her for the amount so paid to David, and the balance for his children. This was openly declared by her, and was well known to all the sisters.

Moreover, it appears that the share so conveyed was subsequently treated by the Fosdicks as belonging to David's children. The New Jersey property, as we have seen, produced no income, and was a constant source of expense in the way of taxes, &c. These expenses were paid by Fosdick, as executor of the will of Mrs. Susan Baldwin, out of the income of the New York property, and regulary charged to that account on his books of account of his dealings with the estate, and the amount divided each year as net income under her will was thereby so much reduced, and the share of that net income paid to the children of David W. Baldwin was proportionately diminished, so that the taxes and expenses paid on the share of David W. Baldwin so

conveyed to Mrs. Fosdick were, in effect, from the start, paid by his children. This is a most significant circumstance, and shows, as it seems to me, that this New Jersey property was treated and considered, at all times, by the Fosdicks as the property of David and his children, in all respects as if the conveyance by David had never been made.

The books of accounts kept by Fosdick, as executor, were produced, showing these entries made by his confidential clerk, by his direction; and the checks drawn and signed by Fosdick for these payments, at stated periods, covering the whole period in question, including the period between the death of Mrs. Fosdick and that of her husband, during which the latter was vested with the title as her devisee, were also produced. They correspond, in amount and date, with the like payments made in the same manner to the other devisees. Regular dividends out of the net income were made, at stated intervals, among the beneficiaries.

The result is that if the parol proof of Mrs. Fosdick's declarations, in connection with the mode of dealing with the property conveyed to her, as manifested by the entries in her husband's books and checks signed by him, are competent, under the statute of frauds, the situation set out in the bill, or its equivalent, is fully established, namely, that Mrs. Fosdick held David's share either as mortgagee to secure her for the moneys she advanced to David, with the understanding that the balance should go to his children, or as trustee for his children for that balance.

Objection was duly made by counsel of the executors of Fosdick against the evidence of the two sisters, defendants, who testified to Mrs. Fosdick's declarations, because it was in contravention of the statute of frauds, and also because given by a party to the record against a party thereto in a representative capacity.

I will deal with the last objection first. The issue as to the character of that deed is raised upon a cross-bill filed by the children of David against the executors of Fosdick, and an answer is prayed against them only, and they only have answered. That cross-bill is, in effect, an independent suit, and may be maintained without making anyone but the Fosdicks parties thereto. The other parties to the suit are not parties

to that issue, and are not in anywise interested in it. They have, in fact, admitted the allegation in the bill that the conveyance was made by way of mortgage. It was upon the issue raised by this cross-bill that the evidence of the two sisters was introduced. Thus it seems plain that the evidence of these witnesses is not within the spirit of the act which prohibits a party to a suit to testify to declarations made by a decedent against his representatives. And I am also of the opinion, without going over the numerous cases in which the courts have been called upon to construe the act in question, that it is not within the letter of the act, and is competent.

The question as to the competency under the statute of frauds of the evidence to establish the interests of the complainants in the cross-bill is not so clear.

It is abundantly established that a deed absolute on its face may be shown by parol evidence to be a mere mortgage, and the disposition of the courts is always to give effect to every business transaction precisely as the parties intended.

But the difficulty in the present case is that the proofs do not show that the parties intended the conveyance to be a mortgage in the ordinary and proper signification of the term. It does not appear that either the grantor or grantee looked upon the money advanced to him as a loan. Still, it is quite clear that the grantee did hold the title as security for the money she advanced to the grantor, and that she held the balance for the benefit of his children, and this gave them a right of redemption.

Another circumstance is the relation to the property which was always accorded to David's children by Mrs. Fosdick's husband, who was the acting executor of the will of Susan Baldwin, and who, after the death of his wife, was the executor of and sole beneficiary under her will. For, as before remarked, it is clearly proven that after the conveyance in question the practice of Mr. Fosdick was to charge the expenses of maintaining the New Jersey property against the rents of the New York property, and thus, in effect, compel the children of David to pay their share of the cost of maintaining the New Jersey property.

Baldwin, Admx., *v.* Trowbridge.

It must be said in this connection that the books of account show no charge for interest on the consideration money of $960 paid to David W.  The death of the parties to the transaction prevents an explanation of this circumstance; but I think that this failure to charge interest cannot be claimed as in anywise affecting the significance of the other circumstances just referred to.

The statute of frauds requires a declaration of trust of lands to be signed by the party.  The entries in the books of account just referred to are not in the handwriting of Fosdick, but, as we have seen, in that of his clerk, made by his direction; but the checks, which, as we have seen, correspond with the amount of the dividends, are signed by him.  And the question is whether or not his signature to the checks may not be properly treated as a signature to all the entries in the books.  I am of the opinion that it may, and that the checks so signed by him amount to a declaration that the title to these premises was held by him on the basis shown by his books, and that is, that the share of the children that was conveyed by David to Fosdick's wife, and by her devised to him, was, in equity, the property of David's children, and, if so, then the legal title was held in trust for them.

I will advise a decree according to these views.  The share of David's children will be subject to the payment to the Fosdicks of the sum of $960, with interest from the average date of the several payments making up that sum.  The costs of the complainant, and each of the defendants, except the cost of the cross-bill and answer thereto and the testimony taken thereon, will be paid out of the fund, and no costs will be recovered by either party against the other.